IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JIMMIE E. EVANS, | ) |
| | ) |
| Plaintiff | )   Civil No. 05-6040-PK |
| | ) |
| v. | )   FINDINGS AND |
| | )   RECOMMENDATION |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant | ) |

MARK MANNING
Cram, Harder, Wells & Baron
474 Willamette Street, Suite 200
Eugene, Oregon 97401
    Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

LEISA A. WOLF
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

    Attorneys for Defendant

PAPAK, Magistrate Judge:

Plaintiff Jimmie Evans seeks judicial review of the Social Security Commissioner's final decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c).

## **BACKGROUND**

Born in 1961, Evans completed the eleventh grade. Tr. 82, 98.[1] Between 1976 and 1983 Evans worked as a concrete finisher and welder fabricator. Tr. 93. Evans suggests he is unable to work due to broken vertebrae, a dislocated hip, traumatic head injuries, a fused right wrist, a shattered left elbow, post-traumatic stress syndrome, depression, and bipolar disorder. Tr. 92.

This matter has a complex procedural history. Evans first filed applications for DIB and SSI on October 15, 1992.[2] Tr.43. The application was initially denied and a hearing was held before an ALJ. On September 5, 1995 the ALJ found Evans disabled, and also determined that alcoholism was a contributing factor material to his disability. Tr. 43. Evans requested review by the Appeals Council alleging that alcoholism was not a material factor. The Appeals Council denied review and Evans appealed to this court. Tr. 43.

On May 8, 1998 this court remanded Evans' case to the Commissioner for clarification of the affects of Evans' alcoholism. Tr. 43. A second hearing was held before an ALJ. On August

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer filed November 18, 2005 (Docket # 13).

[2]In the course of appealing his original claim, Evans filed a second pair of applications for DIB and SSI on August 20, 2001. Tr. 44, 82 - 84, 683 - 685. The ALJ considered these claims jointly in his May 2004 decision. Tr. 44.

2 - FINDINGS AND RECOMMENDATION

25, 2000, the second ALJ again found that alcoholism was a contributing factor to Evans' disability and therefore found him not disabled. Tr. 44.

Evans again appealed to this court. On May 31, 2002 this court again remanded the case to the Commissioner, this time for further consideration of lay testimony, additional evaluation of the medical evidence, and reconsideration of Evans' residual functional capacity. A third hearing was held before an ALJ, who found Evans not disabled on May 15, 2004. Tr. 43 - 56. Evans presently appeals that decision.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Evans challenges the ALJ's evaluation of the evidence and his conclusions at step five.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e), 416.1545(a), 416.920(e), 416.945(a); Social Security Ruling (SSR) 96-8p. The ALJ uses this information to determine if the claimant can perform past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(iv). If the claimant cannot perform past relevant work, the ALJ must determine if the claimant can perform other work in the national economy at step five. *Yuckert*, 482 U.S. at 141; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

3 - FINDINGS AND RECOMMENDATION

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step the burden shifts to the Commissioner to show that jobs exist in the national economy in the claimant's residual functional capacity. *Yuckert*, 482 U.S. at 142; *Tackett*, 180 F.3d at 1098. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566, 404.1520(g), 416.920(g).

## THE ALJ'S FINDINGS

The present ALJ found Evans' allegations concerning his impairments and their impact on his ability to work "not entirely credible." Tr. 55. The ALJ credited evidence supporting Evans' back trauma, liver disease with hepatitis C, degenerative changes of the left elbow, right hand fusion, organic brain disorder, and substance abuse in remission. Tr. 55. The ALJ further found that Evans's prior substance abuse was a "contributing factor material to the finding of disability." Tr. 47 - 49, 51 - 53, 56. The ALJ assessed Evans' RFC:

> The claimant retains the residual functional capacity to perform light work. He can walk no more than 4 hours a day. He can perform 1-2 step simple tasks, and cannot have intense interpersonal relationships. During the time that the claimant was using drugs and alcohol through 1999, he was unable to maintain any regular and continuous work activity.

Tr. 35.

Relying upon vocational expert (VE) testimony, the ALJ found that Evans could perform work in the national economy at step five. Tr. 54. Accordingly, the ALJ determined that Evans was not disabled under the Act at any time through the date of his decision. Tr. 56.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the

4 - FINDINGS AND RECOMMENDATION

record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh "both the evidence that supports and detracts from the Commissioner's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) *citing Martinez v. Heckler*, 807 F.2d. 771, 772 (9th Cir. 1986). The reviewing court "may not substitute its judgement for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes*, 881 F.2d at 750; *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Evans contends the ALJ improperly assessed Evans' testimony and improperly addressed medical evidence. Evans does not challenge the ALJ's finding that his prior substance abuse is a material factor to any finding of disability.

**I.     Evans' Credibility**

The ALJ based his credibility finding upon Evans' medical treatment record and "other evidence of record." Tr. 46, 55.  In support of this finding the ALJ noted inconsistent behavior in Evans' daily activities.  Tr. 52.  Evans' credibility in turn influences interpretation of his medical record.

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).  In construing his credibility findings, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge

of the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id*.

The ALJ cited reported daily activities including chopping wood, doing yard work, and working on the family home. Tr. 52. The ALJ also noted Evans did some welding projects and worked on his truck. *Id.* Evans suggests these activities, especially welding, cannot be equated with the demands of substantial employment. Plaintiff's Opening Brief, 15. The ALJ's consideration of daily activities in a credibility discussion is not a step four finding. *See Orteza*, 50 F.3d at 750. The ALJ did not suggest Evans could return to his work as a welder. Tr. 52, 55. Though a claimant is not required to "vegetate in a dark room," aggregate substantial daily activity may be construed as similar in effort to gainful employment. *Orteza*, 50 F.3d at 750; *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). This court will not overturn inferences reasonably drawn. *Batson*, 359 F.3d at 1193.

The ALJ also noted that despite Evans' reported "very poor social functioning," he has developed romantic relationships, attends counseling, attends church, volunteers with teens, and completed his GED. Tr. 52. This analysis is also sustained. *Orteza*, 50 F.3d at 750; *Batson*, 359 F.3d at 1193.

The ALJ's suggestion that Evans' physician-ordered exercise is inconsistent with his alleged disability is not sustained. Physician-ordered exercise is not equivalent activity to full employment. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

**II.     Medical Source Statements**

Evans contends the ALJ improperly evaluated medical evidence submitted by his treating

physician and three evaluating psychologists.

### 1) Primary Care Physician Dr. McCullough

Dr. McCullough treated Evans between February 2002 and April 2004. Tr. 436 - 440, 447 - 551, 449 - 500. The ALJ credited McCullough's original treatment notes in his decision, citing McCullough's diagnoses of hepatitis C, alcohol and drug dependence in remission, thrombocytopenia, cirrhosis, and bipolar disorder with schizoaffective features. Tr. 49. The ALJ made no other findings regarding McCullough's treatment notes or opinions. Tr. 49.

McCullough submitted a letter to the Appeals Council in October 2004, seven months after the ALJ's March 2004 hearing. Tr. 20 - 31. McCullough's letter affirmatively endorsed statements submitted by Evans' attorney suggesting Evans would have difficulty maintaining an 8-hour per day, 40-hour per week schedule. Tr. 28 - 29. McCullough also affirmatively endorsed statements suggesting Evans experienced marked limitations in "concentration, persistence, and pace." Tr. 29 - 30.

McCullough submitted detailed statements explaining his findings, emphasizing that Evans has been successful in maintaining sobriety. Tr. 21, 22, 23, 24. McCullough also suggested Evans has been unable to work since December 2001, but does not explain what impairment prevented Evans from working at that date. Tr. 23. McCullough stated he believes Evans is unable to maintain a regular work schedule due to his "several disease states." Tr. 24. When asked if substance abuse may be materially separated from his impairments, McCullough declined to affirmatively answer, writing, "I am not entirely sure why the issue of substance abuse becomes an exclusion. I find it remarkable that Mr. Evans got clean and sober." Tr. 23. McCullough elaborated on this statement, but does not establish that Evans' diagnoses may be

separated from his history of substance abuse. Tr. 23. McCullough disagreed with the medical expert's opinion at Evans' hearing that Evans could complete simple one to two step tasks. McCullough cited Evans' pain management protocol in support of this statement. Tr. 25.

The Appeals Council denied review, stating that McCullough's October 2004 report did not substantially change the ALJ's analysis. Tr. 8. Evans suggests that,

> Because the Appeals Council decision may not be reviewed by this court, as the ALJ's decision is the final decision of the Commissioner, Dr. McCullough's letter dated October 13, 2004 should be addressed in the context of the ALJ's decision. 20 C.F.R. §§ 404.979, 416.1481. In this case the ALJ failed to provide any reasons to evaluate Dr. McCullough's letter dated October 13, 2004. This was error.

Plaintiff's Opening Brief, 6. Evans subsequently suggests McCullough's opinion should be credited because the ALJ failed to properly address it. Plaintiff's Opening Brief, 5 - 6.

The regulations Evans cites address Appeals Council decisions:

> After it has reviewed all the evidence in the administrative law judge hearing record and any additional evidence received, subject to the limitations on Appeals Council consideration of additional evidence in §§ 404.970(b) and 404.976(b), the Appeals Council will make a decision or remand the case to an administrative law judge. The Appeals Council may affirm, modify or reverse the administrative law judge hearing decision or it may adopt, modify or reject a recommended decision. 20 C.F.R. § 404.979.

Evans' second citation establishes that when the Appeals Council denies request for review, the administrative law judge's decision "is binding unless you or another party file an action in Federal district court, or the opinion is revised." 20 C.F.R. § 416.1481. These citations do not establish that evidence submitted to the Appeals Council after the ALJ's hearing must be credited because the ALJ failed to review that material.

8 - FINDINGS AND RECOMMENDATION

In response to Evans' argument, Defendant states, "it was not error for the ALJ to have not considered these opinions as they were not in existence at the time of the issuance of his decision." Defendant's Brief, 8. This court agrees and notes that Evans' legal argument regarding McCullough's October 2004 statement is illogical.

The claimant bears the burden of showing disability. 20 C.F.R. §§ 404.1512(a), 416.912(a), *Tackett*, 180 F.3d at 1098. A claimant must also show "good cause" in failing to produce evidence before the date of the hearing. *Mayes v. Massinari*, 276 F.3d 453, 463 (9th Cir. 2001) (citing *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985)). The Appeals Council is not required to evaluate evidence submitted post-hearing simply because it is more favorable to the claimant. *Id.*

In reviewing evidence submitted to the appeals council, this court must consider whether such evidence would "provide a basis for changing the hearing decision." *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993). If the new evidence provides no such basis, the appeals council is not obligated to review the ALJ's decision. *Id.*

Because McCullough's letter establishes no new substantiated diagnoses, provides no new information regarding psychometric testing, and does not contradict the supported medical record, the Appeals Council appropriately found that McCullough's letter did not undermine the ALJ's decision. *Ramirez*, 8 F.3d at 1452. Evans' argument that this court should credit such evidence because the ALJ did not review it fails.

### 2)    Examining Psychologist Dr. Moulton

Examining psychologist Dr. Moulton also submitted a clinical report and two Mental Residual Functional Capacity Reports to the Appeals Council after the ALJ's decision. Tr. 744 -

9 - FINDINGS AND RECOMMENDATION

764. Based upon his clinical interview and an extensive review of Evans' records, Moulton suggested that Evans cognitive functioning deteriorated in the two years prior to his report. Tr. 763. Moulton assigned Evans diagnoses of Cognitive Disorder, Major Depressive Disorder, Generalized Anxiety Disorder, and Pain Disorder. Tr. 763.

Evans repeats his argument regarding the ALJ's alleged failure to consider evidence submitted after the date of a hearing. Plaintiff's Opening Brief, 9 - 10. This argument again fails. Another examining psychologist, Dr. Villanueva, conducted similar neuropsychological testing prior to Evans' hearing. For this reason, Moulton's report does not represent evidence previously unavailable. The Appeals Council is not required to accept new evidence simply because it is more favorable to the claimant. *Mayes*, 276 F.3d at 463.

        3)      **Examining Psychologist Dr. Villanueva**

Evans suggests the ALJ "discredited" examining psychologist Dr. Villanueva because the ALJ improperly found Villanueva's test results inconsistent with those of a non-medical source. Plaintiff's Opening Brief, 11. The ALJ did not discredit Villanueva. Tr. 49. The ALJ accepted Villanueva's findings regarding Evans' difficulty presenting information, cognitive compromise, and deficient processing speed. Tr. 49. The ALJ rejected Villanueva's assessment of Evans' "markedly impaired" memory and social functioning because he found these aspects of Villanueva's report inconsistent with other testing and Villanueva's reported daily activities. Tr. 50.

Evans suggests the ALJ erred in citing psychometric testing prepared by a non-medical source in evaluating Villanueva's opinion. Plaintiff's Opening Brief, 11. The record contains psychometric testing results submitted by an individual identified only as "Ben Ross." Tr. 216 -

10 - FINDINGS AND RECOMMENDATION

221.  Because Ross' credentials are not established, he is evaluated as a lay witness.  Lay witness testimony may be used to demonstrate a claimant's daily functioning, but does not establish a medical diagnosis.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

Though Ross administered clinical tests, the ALJ erred in citing his findings as "clinical" without identifying Ross' credentials.  Tr. 48.  The ALJ subsequently erred in finding that Ross' test results undermined Villanueva's.  *See Lewis v. Apfel*, 236 F.3d 503, 511 - 512 (9th Cir. 2001), *see also Nguyen*, 100 F.3d at 1467.  This finding should not be sustained.

However, the ALJ's remaining review of Villanueva's report is appropriate.   The ALJ is responsible for evaluating medical source evidence and resolving conflicts between opinions.  *Batson*, 359 F.3d at 1195.  The ALJ may cite internal  inconsistencies in evaluating a medical source statement.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).   Here the ALJ rejected Villanueva's "marked" limitations by appropriately citing the contradiction between Villaneueva's GAF analysis and his finding of "markedly impaired" memory.  Tr. 50.  This court will not overturn such inferences reasonably drawn.  *Batson*, 359 F.3d at 1193.  In this context, the ALJ's  notice of Ross' testing is harmless.  This court will not reverse for harmless error.  *Burch v. Barnhart*, 500 F.3d 676, 679 (9th Cir. 2005).

    **4)  Examining Psychologist Dr. Bogart**

Evans also suggests the ALJ rejected examining psychologist Dr. Bogart's report because "plaintiff reported he was doing well in school."  Plaintiff's Opening Brief, 13.  The ALJ found Bogart's assessment "not convincing" because Bogart's suggested impairment level was inconsistent with notes showing Evans was "doing well at community college, and was a pleasant person."  Tr.  49.  The ALJ also rejected Bogart's opinion because it "appeared to be a

11 - FINDINGS AND RECOMMENDATION

recitation of subjective statements from the claimant," and because Bogart admitted Evans' diagnoses were confusing. Tr. 49. The ALJ accepted Bogart's conclusion that Evans may experience interpersonal difficulties at times. Tr. 49.

The ALJ is responsible for resolving inconsistencies in medical evidence. *See Bayliss*, 427 F.3d at 1216. The ALJ may cite daily activities inconsistent with the medical evidence. *Orteza*, 748 F.3d at 750. The ALJ may also reject a report that is internally contradictory. *See Bayliss*, 427 F.3d at 1216. If a claimant is found not credible, the ALJ may disregard statements made by a claimant to a physician. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). The ALJ appropriately applied these standards regarding Evans' Community College attendance, statements to his physicians, and Bogart's contradictory report. This analysis should be sustained. [3]

### III.   Lay Witness Testimony

Evans suggests the ALJ did not give sufficiently germane reasons for rejecting the testimony of his mother, Patsy Smith. Smith testified that Evans was in pain, that he walked slowly, and that he had significant difficulty using his hands. Tr. 52, 827 - 831.

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d); 404.1545(a)(3); 416.913(d)(4); 416.945(a)(3); *Lewis*, 236 F.3d at 511. Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The value of lay witness testimony lies in their eyewitness observations, which may "often tell

---

[3] No authority suggests an ALJ may reject a medical opinion because the claimant is "a pleasant person." This analysis should not be sustained.

whether someone is suffering or merely malingering." *Dodrill*, 12 F.3d at 918. The ALJ may not reject such testimony without comment, but he may reject lay testimony inconsistent with medical evidence. *Nguyen*, 100 F.3d at 1467; *Lewis*, 236 F.3d at 512. If an ALJ rejects lay witness testimony entirely, he must give reasons germane to the witness. *Id.*

The ALJ did not reject Smith entirely, instead finding that the record did not support the extent of impairment Smith observed. Tr. 52. The ALJ first cited the prior ALJ's findings that Smith's statements regarding Evans' limited hand use were not credible. Tr. 52. A prior ALJ's decision is binding upon a subsequent ALJ unless a "changed circumstance" occurs. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).

The ALJ also cited Evans' activities with his car and community college attendance regarding Evans' limited hand use. Tr. 52. The ALJ finally found the medical evidence did not suggest Evans "needs to spend much time in bed." Tr. 53. For these reasons the ALJ appropriately found that substantial evidence did not support Smith's testimony and that Smith's testimony was inconsistent with medical evidence. *Lewis*, 236 F.3d at 512, *Nguyen*, 100 F.3d at 1467. The ALJ's rejection of Smith's testimony for these reasons should be sustained.

The ALJ finally suggested Smith's testimony was motivated by secondary gain. Tr. 53. Generally, this court does not sustain such inference: a claimant applies for disability benefits with the expectation of receiving monetary benefit. If the desire for receiving benefits were itself sufficient to discredit testimony, no claimant (or his friends and family) would be found credible. *Ratto v. Secretary, Department of Health and Human Services*, 839 F.Supp. 1415, 1429 (D. Oregon, 1993). The ALJ's rejection of Smith's testimony for this reason should not be sustained.

13 - FINDINGS AND RECOMMENDATION

///

///

///

///

///

///

///

///

///

///

///

///

14 - FINDINGS AND RECOMMENDATION

**CONCLUSION**

The Commissioner's decision that Evans did not suffer from disability and is not entitled to benefits under titles II and XVI of the Social Security Act is based upon correct legal standards and supported by substantial evidence. I recommend the Commissioner's decision be affirmed and the case dismissed.

**SCHEDULING ORDER**

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due October 5, 2006. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 20th day of September, 2006.

                                                           __/s/ Paul Papak_____
                                                           Paul Papak
                                                           United States Magistrate Judge