IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

JIMMIE E. EVANS,

       Plaintiff,

                                        CV-05-6040-PK

                                        FINDINGS AND
v.                                    RECOMMENDATION


MICHAEL J. ASTRUE,

       Defendant.

PAPAK, Magistrate Judge:

This action was filed against defendant Michael A. Astrue, Commissioner of Social

Security, by plaintiff Jimmie Evans on February 14, 2005.  Evans sought review of the

Commissioner's decision finding Evans not disabled for purposes of entitlement to Social

Security Income benefits.  On September 20, 2006, I recommended that the Commissioner's

decision be affirmed, and on October 13, 2006, Judge King adopted my recommendation and

affirmed the Commissioner's decision.  Evans appealed the district court's decision on December

6, 2006, and on March 25, 2009, the Court of Appeals for the Ninth Circuit reversed and

remanded for further administrative proceedings.  The parties agree that Evans prevailed in those

further proceedings, and obtained SSI benefits, including an award of retroactive benefits.  On

April 24, 2009, Evans moved for an award of attorney fees pursuant to the Equal Access to

Justice Act (the "EAJA"), and on July 29, 2009, I entered an award of attorney fees in Evans'

Page 1 - FINDINGS AND RECOMMENDATION

favor in the amount of $9,709.32.

Now before the court is Evans' motion (#42) for approval of payment to his counsel of additional attorney fees out of Evans' retroactive benefits award, pursuant to 42 U.S.C. § 406(b). I have considered the parties' briefs and all of the evidence in the record. For the reasons set forth below, Evans' motion should be granted, and payment to Evans' counsel of $22,843.68 out of Evans' past-due benefits award should be approved.

**ANALYSIS**

Pursuant to 42 U.S.C. § 406(b), Evans moves for approval of payment of attorney fees to his counsel in an amount equal to 25% of his retroactive SSI award, less the $9,709.32 that his counsel has already received pursuant to the EAJA and less an additional $6,000 received by his counsel pursuant to 42 U.S.C. § 406(a) for legal services provided in connection with administrative proceedings before the SSA. Section 406(b) provides, in relevant part, as follows:

> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment. . . .

42 U.S.C. § 406(b)(1)(A). By contrast with fees awarded pursuant to the EAJA, a fee-shifting statute, Section 406(b) fees are paid out of the retroactive benefits awarded to the successful Social Security claimant. *See id.* Counsel representing Social Security claimants may not seek compensation from their clients for trial litigation other than through a Section 406(b) fee. *See id.* In the event that both an EAJA fee is awarded and a Section 406(b) fee payment is approved, the claimant's counsel must refund to the claimant the amount of the smaller of the two payments. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002). Any Section 406(b) fee must

be approved by the court following analysis of its reasonableness before it may be paid.  *See* 42 U.S.C. § 406(b)(1)(A).

In *Gisbrecht*, the Supreme Court established that the reasonableness of a 406(b) contingency fee is not to be determined primarily by reference to the lodestar method which governs fee-shifting disputes.  *See Gisbrecht*, 535 U.S. at 801-802.  Instead, to the extent contingency fee agreements do not provide for fees exceeding 25% of claimants' retroactive benefits, their terms are fully enforceable subject only to the court's review "to assure that they yield reasonable results in particular cases."  *Id.* at 807.  It is the claimant's counsel's burden to establish the reasonableness of the calculated fee.  *See id.*

In assessing the reasonableness of a Section 406(b) fee, courts look first to the contingency fee agreement itself, and then may reduce the resulting award "based on the character of the representation and the results the representative achieved."  *Id.* at 808.  The *Gisbrecht* court provided, as examples of circumstances that could justify a downward reduction, situations in which the attorney was responsible for delay or in which "the benefits are large in comparison to the amount of time counsel spent on the case."  *Id.*  The court specified that "the court may require the claimant's attorney to submit, not as a basis for satellite litigation, but as an aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement, a record of the hours spent representing the claimant and a statement of the lawyer's normal hourly billing charge for noncontingent-fee cases."  *Id.*, *citing Rodriquez v. Bowen*, 865 F.2d 739, 741 (6th Cir.  1989) (*en banc*).

The Ninth Circuit addressed the *Gisbrecht* reasonableness analysis in *Crawford v. Astrue*, 586 F.3d 1142 (9th Cir. 2009) (*en banc*).  The *Crawford* court reviewed the consolidated appeals

of three different actions in which district courts reduced Section 406(b) fees from the amounts requested. In the first of these, claimant Clara Crawford was represented by attorney Brian Shapiro. *See Crawford*, 586 F.3d at 1144. The Administration initially denied Crawford's application for benefits, but following litigation, ultimately awarded her $123,891.20 in past-due benefits. *See id.* at 1145. Although Shapiro and Crawford had entered into a contingency fee agreement that provided for a 25% contingency fee, Shapiro requested a fee of only $21,000, or 16.95% of Crawford's retroactive benefits, representing an amount 3.55 times the amount that would have resulted from a lodestar calculation. *See id.* The district court found no evidence of fraud or over-reaching in the negotiation of the fee agreement, that Shapiro had caused no unnecessary delay, and that Shapiro's lodestar calculations were correct. *See id.* However, the district court found that Shapiro had not met his burden to show that the requested "enhancement" of the lodestar figure was reasonable, because he had not presented evidence of his own firm's success rate in representing Social Security claimants (as opposed to data regarding the success rate of Social Security claimants generally) and because Crawford's attorneys' skill and experience were already reflected in the lodestar figure. *See id.* The court ruled, without explanation, that a 40% "enhancement" over the lodestar figure was reasonable, and on that basis awarded a fee of $8,270.00, the equivalent of 6.68% of Crawford's retroactive benefits. *See id.*

In the second action of the consolidated appeal, claimant Ruby Washington was represented by attorney Young Cho. *See id.* at 1144. As in Crawford's case, the Administration initially denied Washington's application for benefits, but following litigation, awarded $76,041.00 in retroactive benefits. *See id.* Although Cho and Washington had entered into a

Page 4 - FINDINGS AND RECOMMENDATION

contingency fee agreement that provided for a 25% contingency fee, Cho requested a fee of only

$11,500, or 15.12% of Washington's retroactive benefits, representing an amount 1.82 times the

amount that would have resulted from a lodestar calculation. *See id.* The district court found no

evidence of fraud or over-reaching in the negotiation of the fee agreement, that Cho had caused

no unnecessary delay, and that Cho's lodestar calculations were correct. *See id.* at 1146.

However, as for Crawford, the district court found that Cho had not met his burden to show that

the requested "enhancement" of the lodestar figure was reasonable, because he had not presented

evidence of his own firm's success rate in representing Social Security claimants, because

Washington's attorneys' skill and experience were already reflected in the lodestar figure, and

because Cho had not been required to do much work to obtain benefits on Washington's behalf.

*See id.* The court ruled, without explanation, that a 40% "enhancement" over the lodestar figure

was reasonable, and on that basis awarded a fee of $8,825.53, the equivalent of 11.61% of

Washington's retroactive benefits. *See id.*

In the third action of the consolidated appeal, claimant Daphne M. Trejo was represented

by attorney Denise Bourgeois Haley. *See id.* at 1144. As in Crawford's and Washington's cases,

the Administration initially denied Trejo's application for benefits, but following litigation,

awarded $172,223.00 in retroactive benefits. *See id.* at 1146. Although Haley and Trejo had

entered into a contingency fee agreement that provided for a 25% contingency fee, Haley

requested a fee of only $24,000, or 13.94% of Washington's retroactive benefits, representing an

amount 2.79 times the amount that would have resulted from a lodestar calculation. *See id.* The

district court found no evidence of fraud or over-reaching in the negotiation of the fee agreement,

that Haley had caused no unnecessary delay and that her representation had been excellent, and

that Haley's lodestar calculations were correct, except that 1.5 hours of claimed paralegal time and 1.4 hours of claimed attorney time had been improperly attributed to the federal action. *See id.* However, as for Crawford and Washington, the district court found that Haley had not met her burden to show that the requested fee was reasonable, because she had not presented evidence of her own firm's success rate in representing Social Security claimants, because Trejo's attorneys' skill and experience were already reflected in the lodestar figure, and because Haley had not presented evidence that Haley's firm had been precluded from accepting other work in consequence of Haley's representation of Trejo. *See id.* The court ruled, without explanation, that a 100% "enhancement" over the lodestar figure was reasonable, and on that basis awarded a fee of $12,650.40, the equivalent of 7.35% of Trejo's retroactive benefits. *See id.*

The *Crawford* majority characterized the district courts' decisions as impermissibly beginning with the lodestar calculation and determining a reasonable fee award by applying enhancements to the lodestar figure, rather than by beginning with the claimants' fee agreements and applying any appropriate reductions to the calculated contingency fees to arrive at reasonable fees. *See id.* at 1150. In addition, the *Crawford* majority found no evidence of substandard performance or dilatory conduct by the claimants' attorneys, and that the requested fees were not "excessively large in relation to the benefits achieved." *See id.* at 1151. On the basis of these findings, the *Crawford* majority found that the requested fees – each of which was less than the fee provided for in the applicable contingency fee agreement – were reasonable in each case, and therefore reversed each district court's decision with instructions to award the requested fees. *See id.* at 1151-1152.

As a separate and independently adequate ground for vacating the orders below, the

Page 6 - FINDINGS AND RECOMMENDATION

*Crawford* court further noted the district courts' failure to explain the bases for the percentages they found to constitute reasonable enhancements of the lodestar figure in each case. *See id.* at 1152. The *Crawford* court also flatly rejected the district courts' reliance on the attorneys' failure to provide firm-specific historical success rates as a basis for reducing the requested fee awards, and suggested that the reasonableness of a fee award could be measured in part by reference to the risk counsel assumed by agreeing to take on a particular case, given the specific facts of that case. *See id.* at 1152-1153.

Here, the Administration initially rejected Evans' application for SSI benefits, only to award retroactive benefits following litigation. Evans provides evidence that those retroactive benefits were awarded in the total amount of $153,412. As in the cases reviewed by the *Crawford* and *Gisbrecht* courts, Evans entered into a contingency fee agreement with his counsel providing for payment of 25% of Evans' retroactive benefits to his attorney in the event retroactive benefits were awarded following litigation in federal court. It therefore now falls to me to assess whether $22,843.68, or 25% of the retroactive benefits award less a total of $15,709.32, constitutes reasonable compensation for Evans' counsel under the various factors discussed in *Gisbrecht* and *Crawford*.

### A.    Character of the Representation

#### 1.    Quality of Attorney Performance

As *Gisbrecht* and *Crawford* both make clear, substandard performance by a legal representative warrants a reduction in a Section 406(b) fee award. *See Gisbrecht*, 535 U.S. at 808; *Crawford*, 586 F.3d at 1151. Here, the evidentiary record does not suggest that Evans' counsel's performance was in any way substandard. No reduction in the Section 406(b) fee is

Page 7 - FINDINGS AND RECOMMENDATION

warranted due to the character of the representation here.

### 2.    Dilatoriness

A Section 406(b) award may properly be reduced if any delay in proceedings is properly attributable to the claimant's counsel.  *See Gisbrecht*, 535 U.S. at 808; *Crawford*, 586 F.3d at 1151.  Here, the record does not suggest that Evans' counsel was responsible for any delay of these proceedings.  No reduction in the Section 406(b) fee is warranted on the basis of dilatory performance.

### B.    Proportionality of Benefits Awarded to Attorney Time Spent

The *Gisbrecht* and *Crawford* courts both held that a Section 406(b) award could be reduced if the benefits awarded to the Social Security claimant were out of proportion to the time spent by the claimant's attorney.  *See Gisbrecht*, 535 U.S. at 808; *Crawford*, 586 F.3d at 1151.  Although neither court's opinion provides significant guidance as to how to measure such disproportionality, *Gisbrecht* established, *see* 535 U.S. at 808, and *Crawford* affirmed, *see* 586 F.3d at 1151, that records of attorney time expended and a statement of the attorney's normal hourly fee in non-contingent matters could be considered in this connection, but only as an "aid" in assessing the reasonableness of the award provided in the contingency fee agreement.

Considered in isolation, the product of the lodestar calculation can at best be of extremely limited utility in assessing the reasonableness of a contingency fee.  The lodestar method of calculating fees is designed for use where it is intended that an attorney be compensated strictly for time expended and not on the basis of results achieved, milestones reached, or any of the myriad other bases by which clients may permissibly compensate their legal representatives, and where the probability of nonpayment is both low and unrelated to the attorney's ultimate success

or failure.  By contrast, the method authorized under Section 406(b) is one designed to

compensate attorneys commensurately with results achieved.  As a matter of logic, the fact

(standing alone) that a fee calculated according to the lodestar method differs from a fee

calculated according to a contingency fee agreement is uninformative as to whether the

contingency fee might be disproportionate.

Approaching the question from first principles, it is clear that the disproportionality

analysis can have nothing to do with the absolute amount of the Section 406(b) fee requested,

since that fee is always a maximum of 25% of the retroactive benefits award, and must

necessarily address primarily the effective requested hourly rate that may be back-derived by

dividing the putative contingency award (excluding applicable reductions) by the number of

hours spent in pursuing it.  Although that effective requested hourly rate cannot usefully be

directly compared to a reasonable hourly fee to determine its proportionality, it is logically

defensible to posit, at least in the abstract, that an effective requested hourly rate is not

disproportionately high if it is less than or equal to the product of a reasonable hourly rate for

non-contingent matters and the reciprocal of the pre-litigation probability that litigation would

lead to a favorable result, based on the particular facts presented in a given case.[1]  That is, an

effective requested hourly rate cannot be disproportionately high if it does not overcompensate an

attorney for the risk that attorney assumed at the time the representation was undertaken that the

attorney would ultimately receive no compensation for his or her services.  An attorney is not

---

[1]  Thus, if $100 is a reasonable hourly rate of compensation for non-contingent matters,
an effective requested hourly rate would not be disproportionate in light of the risk a particular
contingency matter presented if, *e.g.*, the effective requested hourly rate did not exceed $400
where the probability of a favorable outcome was 25%, or one in four.

overcompensated for such risk if the pre-litigation expected value of the representation – the probability of a favorable result times the compensation that would be received in the event of a favorable result – does not exceed the product of the appropriate hourly rate and the expected number of hours required.

In addition to giving cognizable effect to the *Gisbrecht* court's suggestion that an attorney's normal hourly rate could bear materially on the disproportionality analysis and the *Crawford* court's suggestion that case-specific risk could be a material factor in assessing the reasonableness of a Section 406(b) fee, measuring the relationship between a reasonable hourly fee for non-contingent matters and the effective requested hourly rate by reference to the case-specific risk of an unfavorable result has the benefit of suggesting a potentially useful metric for assessing proportionality:  a contingency fee award is disproportionately high where it disproportionately overcompensates for the pre-litigation risk of an unfavorable result. Necessarily, however, this metric leaves at least two open questions:  how is pre-litigation risk to be determined?  And by what proportion may an award overcompensate risk without becoming disproportionate?

Despite these unanswered questions, I conclude that the proposed metric is of at least potential utility in assessing the reasonableness of Section 406(b) fee awards under the current state of applicable case law.  As the *Gisbrecht* court noted, the "district courts are accustomed to making reasonableness determinations in a wide variety of contexts," 535 U.S. at 808, and widespread adoption of the metric would permit the development of benchmark values for determining the proportionality of risk mitigation.  I therefore assess the proportionality of the fee requested in this action to the time expended in litigation by reference to the metric outlined

Page 10 - FINDINGS AND RECOMMENDATION

above.

Evans provides documentary evidence of his counsel's time expenditures in this case, totaling 58.85 hours of attorney time.[2]  To give effect to the contingency fee arrangement in place between Evans and his counsel would thus yield an effective hourly rate of $549.75 (25% of $153,412.00 is $38,353.00; $38,353.00 less $6,000 is $32,353.00; the quotient of $32,353.00 and 59.2 hours is $549.75 per hour).

Evans does not advise the court as to his counsel's normal hourly rate, if any, for non-contingent matters.  I nevertheless take judicial notice that the Oregon State Bar Economic Surveys provide information as to rates prevalent in various Oregon legal communities in the years in which survey data are collected.  I further take judicial notice that the Oregon State Bar 2007 Economic Survey provides information as to rates actually charged by Oregon attorneys in 2006.  According to the 2007 Economic Survey, the median hourly rate charged by Portland-area attorneys practicing in "other" areas of private practice in 2006 was $222.  In this litigation, Evans' counsel expended 2.5 hours in 2005, 18.75 hours in 2006, 31.6 hours in 2007, 3.75 hours in 2008, and 2.25 hours in 2009.  Even without adjusting for inflation, and instead using $222 as the rate for benchmark comparison purposes as to all years in which attorney time was expended, the effective requested hourly rate of $549.75 is the equivalent of 2.48 times the estimated reasonable hourly rate for non-contingent matters.  The reciprocal of 2.48 is 0.40; thus, conservatively, the requested fee award would be clearly proportionate to the time spent if the pre-litigation risk of an adverse result was assessible at not less than 60%.

Ideally, a 406(b) fee petitioner would provide in support of his or her petition, in addition

---

[2]  Evans asserts, incorrectly, that the total number of hours documented was 59.2 hours.

to evidence of the total retroactive benefits award, a contemporaneously prepared record of time expended, a copy of the operative fee agreement, and a statement of the attorney's normal hourly fee in non-contingent matters, some statement of the attorney's pre-litigation assessment of the risk the attorney undertook, in agreeing to represent the Social Security claimant, that an unfavorable result would occur, resulting in no compensation for the attorney's services.  Here, I have been provided with no information as to Evans' counsel's pre-litigation assessment of the risk presented by Evans' Social Security claim.  However, Evans offers the statistic, apparently derived from data provided by the National Organization of Social Security Claimant's Representatives, that claimant-unfavorable results are obtained in 66.48% of all Social Security court cases.  Moreover, my analysis of the issues presented by this case suggests that the pre-litigation risk presented by Evans' claim was likely significantly higher than that presented by the "average" Social Security claim, as illustrated by the fact that this court initially affirmed the Social Security Commissioner's adverse decision on Evans' claim.

Because I construe the pre-litigation risk of an unfavorable result as significantly in excess of approximately 66%, I conclude that compensation at an effective hourly rate of $549.75 would not constitute disproportionate compensation of Evans' counsel for the legal services provided in this action.  Reduction is therefore not warranted in connection with the proportionality factor, taking into account both the case-specific risk of an unfavorable result and a conservative estimate of the appropriate normal hourly rate for non-contingent matters.

### C.    Appropriate Fee

For the foregoing reasons, I find that the contingency fee agreement in place between Evans and his counsel is within the statutory limits provided in 29 U.S.C. § 406(b), and that the

Page 12 - FINDINGS AND RECOMMENDATION

fee provided therein is reasonable under the applicable circumstances. Evans' motion for approval of Section 406(b) fees should therefore be granted, and the Commissioner should be ordered to deduct the total amount of $22,843.68 ($153,412.00 * 0.25 - $9,709.32 - $6,000) from the gross amount of Evans' retroactive benefits awards and remit that amount to Evans' counsel, as a reasonable attorney's fee.

## CONCLUSION

For the reasons set forth above, I recommend that Evans' motion (#42) be granted, and that payment to Evans' counsel of $22,843.68 out of Evans' retroactive benefits awards be approved.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 4th day of February, 2011.

/s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge

Page 13 - FINDINGS AND RECOMMENDATION